ETHRIDGE, Chief Justice:
This case involves the question of whether a mechanic’s lien under code section 353 is prior to the claim of a conditional vendor, where the mechanic’s lien is asserted for loading, hauling, and unloading an oil well drilling rig and equipment. The statute extends the lien to things “constructed, *500 manufactured, or repaired.” Miss. Code Ann. § 353 (1956). The Circuit Court of Rankin County gave a peremptory instruction for the conditional vendor, appellee Cabot Corporation. From that judgment Sidney T. White, d/b/a White Heavy Haulers, has appealed. We affirm.
Code section 353 provides:
All carriages, buggies, wagons, plows, or any article constructed, manufactured or repaired for any person, and at his instance, shall be liable for the price of the labor and material emploj'ed in constructing, manufacturing, or repairing the same; and the mechanic to whom the price of said labor and material may be due shall have the right to retain possession of such things so constructed, manufactured, or repaired until the price be paid; and if the same shall not be paid within thirty days, he may commence his suit in any court of competent jurisdiction, and, upon proof of the value of the labor and materials employed in such repairs, manufacture or construction, he shall be entitled to judgment against the party for whom such labor was done or materials fitrnished, with costs, as in other cases, and to a special order for the sale of the property retained in his possession for the payment thereof, with costs, and to an execution, as in other cases, for the residue of what remains unpaid after sale of the property.
On May 7, 1964, Cabot Corporation (called Cabot) with principal offices in Houston, Texas, sold to A. R. Aldridge, doing business as Auby’s Well Service and Workover Company, two oil well drilling rigs for a consideration of $122,248.58, with the vendor retaining title until purchase price was paid. Only one of the rigs is involved here. The conditional sale contract was recorded in Hinds and Rankin Counties. The contract provided that Al-dridge would not sell or encumber the equipment without the written consent of the seller. Nevertheless, in violation of this agreement, and without the knowledge or consent of Cabot, on November 1, 1964, Aldridge sold the rig to Howard Parker, who was plaintiff in the trial court. Sidney White, d/b/a White Heavy Haulers, performed certain loading and hauling services for Aldridge on the rig. Aldridge did not pay White for some of these services, and White refused to release the rig from his yard. Parker brought this re-plevin action against White, and Cabot joined by way of affidavit as claimant. Al-dridge had defaulted in the payments under the conditional sale contract. Parker failed to appear and the suit was dismissed with prejudice as to him. The issue was tried between White and Cabot, and the circuit court gave a peremptory instruction for Cabot.
From May 1964, up to the time the rig collapsed in February 1965, White, in his business as a heavy hauler, rendered certain services in connection with the use of the rig. Sometime in February 1965, the rig collapsed or turned over while in use by Parker in Wayne County. A representative of Cabot then made arrangements with White to move the rig to White’s yard in Rankin County. The cost of removing the rig to White’s yard was paid into the registry of the court by Cabot, which amount it admitted owing him.
The key issue is whether the rig was “constructed, manufactured, or repaired” by White’s services. Certainly White did not manufacture the rig, and he admitted that he did not repair it, so the question is whether White has a lien for “the labor and material employed in constructing * * *» it.
White is not a mechanic, but designates himself as a “heavy hauler.” The invoices introduced by him show that the work done was essentially the kind of work expected of a hauler of heavy equipment. It is reflected in six invoices, charging for: (1) hauling 1 load of tubing, 6 hrs. 5-ton truck —$63.65; (2) hauling and loading rotary table and mise, rig parts, 7 hrs. 6-ton truck, *501 7 hrs. helper time — $103.82; (3) setting drum off rig, 2 hrs. 6-ton truck, 2 hrs. helper time — $29.66; (4) rolling drill line •on spool at Flora, Miss., 9 hrs. 5-ton truck —$95.98; (5) moving rig into location and rigging up, 24 hrs. 12-ton truck, 24 hrs. helper time — $432.22; (6) tearing rig down, moving it to new location, and rigging up, 59 hrs. 12-ton truck, 11 hrs. 6-ton truck, 114 hrs. helper time — $1,335.77.
We do not think that any of this work can he classified as “construction” within the terms of Code section 353.
In Orr v. Jackson Jitney Car Co., 115 Miss. 140, 75 So. 945, 946 (1917), priority of liens among various creditors upon a “Jitney bus” was involved. Dumford, a mechanic, intervened and set up a claim for repairs to the bus, which was allowed. However, the court held that he had no lien “for the charges in his account aggregating $14.25 for ‘going after ánd bringing in’ the car, so that he might repair it; services of this character not coming within the provisions of” the statute. Orr held that a claim for hauling or transporting -a non-operating motor vehicle was not within the statute.
Hannan Motor Co. v. Darr, 212 Miss. 870, 56 So.2d 64 (1952), was a suit by a motor company to enforce a mechanic’s lien on a motor truck and a purchase money lien on tires and tubes. In disallowing certain of the mechanic’s lien claim, it was said that prior decisions had established two rules: First, the mechanic’s lien has priority over a prior mortgage type of lien only if the repairs were reasonably necessary to preserve the property, to permit its ordinary operation, and to prevent its deterioration; second, the statute requires “that a substantial part of such a claimed lien must be labor.”
Invoices (1) through (3) were for loading and hauling the stated equipment. Number (4) was for assembling and rolling cable. Invoices (5) and (6) were in effect for tearing the rig down, hauling and transporting it to a new location, and setting it down at the new location. White testified that he specialized in hauling heavy equipment. He was in the trucking business, operating 17 trucks. The rates which he charged were set by the Public Service Commission. After he hauled and transported the equipment to the new location, he would “set it up,” and would place it “where it could be tied into the rig.” This disassembling and reassembling the rig was not “constructing” it within the terms of the statute. The word “construct” in the statute comprehends more than simply disassembling, transporting, unloading, and in some respects reassembling a drilling rig. It connotes the building, composing, fabricating, or erecting of a piece of property or structure somewhat permanent in nature. See 16A C.J.S. Construct at 1231 (1956); 16A C.J.S. Construction at 1234; 57 C.J.S. Mechanics’ Liens § 22a (1948); 36 Am.Jur., Mechanics’ Liens § 41 (1941). Generally the word “construc-tion” includes “whatever is contributed either in labor or materials toward the making or finishing of any part” of a completed structure or a building. 36 Am. Jur., Mechanics’ Liens § 41 (1941).
Buckwalter v. McElroy, 205 Miss. 54, 38 So.2d 317 (1949), upheld a lien on electrical equipment and machinery installed in a permanent fashion by the mechanic in a building. It is not relevant to the present issue.
Affirmed.
JONES, BRADY, INZER and ROBERTSON, JJ., concur.